**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

THOMAS A. SIMONIAN,

      Relator,

    v.

GLOBAL INSTRUMENTS, LTD. and
GLOBAL TV CONCEPTS, LTD.,

      Defendants.

Civil Action No. 1:10-cv-01293

**Honorable Elaine E. Bucklo**

<u>**RELATOR'S RESPONSE IN OPPOSITION**</u>
<u>**TO DEFENDANTS' MOTION TO DISMISS OR STAY**</u>

Joseph M. Vanek
John P. Bjork
VANEK, VICKERS & MASINI, P.C.
111 S. Wacker Drive, Suite 4050
Chicago, Illinois 60606

Bruce S. Sperling
Robert D. Cheifetz
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

Martin Goering
Jessica E. Rissman
EUGENE M. CUMMINGS, P.C.
One North Wacker Drive, Suite 4130
Chicago, Illinois 60606

*Attorneys for Relator, Thomas A. Simonian*

### I. Overview

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America ("Relator"), respectfully submits this Response to the Motion to Dismiss or Stay filed by Defendants Global Instruments, Ltd. and Global TV Concepts, Ltd ("Defendants"). As set forth herein, Defendants' Motion to Dismiss should be denied because: (a) subsequent to the filing of Defendants' Motion, the Federal Circuit confirmed that products once covered by now-expired patents are "unpatented" within the meaning of 35 U.S.C. §292 (*Pequinot v. Solo Cup Co.*, __ Fed.3d __, Case No. 2009-1547 (Fed. Cir. June 10, 2010) (hereinafter "*Solo Cup*") attached as **Exhibit A** hereto)); (b) Congress granted the Relator standing to file this lawsuit *on behalf of the United States*, the United States has suffered an injury from Defendants' false marking, and the Relator has sufficiently pled his standing here; and (c) the Relator has clearly complied with his pleading obligations under both Rule 8(a) and 9(b).

The Relator submits that Defendants' Motion to Stay be denied as well. In light of the Federal Circuit's *Solo Cup* ruling on the merits, it is clear that Relators like Mr. Pequinot and Mr. Simonian have standing to sue, and there is no need to await a ruling in *Stauffer* to confirm subject matter jurisdiction here. [1]

### II. Background

A patent is a contract between the public and an inventor. *Grant v. Raymond*, 31 U.S. 218, 242 (1832). This contract gives monopoly-like rights to the inventor for a limited time. *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("By the patent laws, Congress has given to the inventor the opportunity to secure the material rewards for his invention for a limited time, on condition that ... upon the expiration of the patent the public be left free to use

---

[1] Defendants' Motion also seeks a stay pending the Federal Circuit's decision in *Pequinot v. Solo Cup*, No. 2009-157. (**Ex. A**) However, a decision in that case was rendered on June 10, 2010, after the filing of Defendants' Motion. *Id.*

the invention"). When those patent rights expire, the former-patentee has an obligation not to mark a product with that patent, because doing so provides the public with false information concerning the "status of intellectual property embodied in an article of manufacture or design." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1356 (Fed. Cir. 2005). Put another way, Congress intended that the public be spared the search costs of determining the status of such intellectual property. *Id.*

Congress enacted 35 U.S.C. §292 with the purpose of preventing persons (and companies like the Defendants) from telling the world that a product is covered by a particular patent when it is not, in order to protect consumers, competition, and the integrity of the patent system. *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303-4 (Fed. Cir. 2009). To discourage false marking, Congress provides for a fine of up to "$500 per offense" and offers citizens a reward for collecting that fine on the government's behalf. The statutory language that governs Defendants' conduct here is as follows:

(a)    ... Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or numbering importing that the same is patented, for the purpose of deceiving the public ... shall be fined not more than $500 for every such offense.

(b)    Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. §292.

Even before *Solo Cup,* two recent Federal Circuit cases had increased the public's understanding of the statute and the financial rewards available to collect fines on behalf of the government. In *The Forest Group*, the Federal Circuit explained that the phrase "$500 for every such offense" meant that a false marker should be penalized up to $500 for each article on which it placed a false marking. 590 F.3d at 1303-4. In doing so, the Court specifically rejected the argument that such an interpretation would lead to the *unwarranted* creation of a "cottage

2

industry" of citizen bounty- hunters who would be incentivized to pursue such claims on behalf

of the government.  To the contrary, the Court stated that such bounty-hunting was in fact what

Congress had intended by establishing the bounty in the first place:

> **Rather than discourage such activities, the false marking statute explicitly permits *qui tam* actions.  By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.**

*Id.* (emphasis added).  Indeed, the Federal Circuit stated that its understanding of this incentive-

based system was one of the bases that supported its holding that the fine should be assessed "per

article" marked:

> **The fact that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs – who would share in the penalty – to bring suit.**

590 F.3d at 1304 (emphasis added).  While competitors have their own financial motivation to

police false patent markers (and Section 43(a) of the Lanham Act to use as leverage), citizen

bounty-hunters need a meaningful financial incentive to proceed with such suits on behalf of the

government given the expense involved:

> **It seems unlikely that any *qui tam* plaintiffs would incur the enormous expense of patent litigation in order to split a $500 fine with the government.**

*Id.* (emphasis added).

   *The Forest Group* built upon the Federal Circuit's earlier explanation in *Clontech Labs* of

the requirements necessary for a plaintiff to obtain the civil fine.  There, the Federal Circuit

explained several features of the statute, including: (a) what it means to falsely mark an

unpatented article; (b) how the public and competitors are injured by mis-marking; and (c) the

level of intent required to show that the defendant had mismarked a product "for the purpose of

deceiving the public." *Clontech Labs*, 406 F.3d at 1352 and 1356-7.  In this regard, the Federal

Circuit's definition of false marking is straightforward. "According to the statute, when an unpatented article is marked with the word 'patent' or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public, the fine is invoked." 406 F.3d at 1352. The court continued: "[w]hen the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Id.* [2]

With regard to the injury, as the Federal Circuit made clear, false marking harms the public interest because, *inter alia*, it forces the public to expend resources it should not have to:

> false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Clontech Labs*, 406 F.3d at 1356-7.

With regard to the question of fact whether false marking rises to the "level of statutory deception," the Federal Circuit articulated the test as follows: "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech*, 406 F.3d at 1352. Put another way, "'the *fact* of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent.'" *Id.* (emphasis added; citation omitted). Or, as the Supreme Court recently phrased it:

> We recognize that certain statements are such that, to show them false, is normally to show scienter as well. It is unlikely, for example, that someone

---

[2] The Federal Circuit's recent decision in *Solo Cup* put to rest any question as to whether products marked with expired patents are "unpatented" for the purpose of Section 292. (**Ex. A** at 9, 11) The *Solo Cup* court held: "We agree with Pequinot that an article covered by a now-expired patent is 'unpatented'" *Id.* at 9.

would falsely say 'I am not married' without being aware of the fact that his statement is false.

*Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 at 1796-7 (April 27, 2010).

### III. Defendants' Motion to Dismiss Should Be Denied

**A.      Marking with Expired Patents Constitutes False Marking.**

Defendants argue at length that marking after patent expiration does not violate Section 292. (Defendants' Memorandum in Support of Motion to Dismiss or Stay at 3-7). However, subsequent to the filing of Defendants' Motion, the Federal Circuit was faced with this very issue and explicitly held that products once covered by now-expired patents are "unpatented" within the meaning the statute. *Solo Cup* (**Ex. A** at 8-11).

Like the Defendants here, the Defendant in *Solo Cup* argued that products previously protected by patents that have since expired are not "unpatented articles". The court rejected this argument, unambiguously stating, "...articles marked with expired patents numbers are falsely marked." *Id.* at 11.

**B.      The Relator Has Standing to Bring Suit on Behalf of the Government.**

As a *qui tam* Relator, Mr. Simonian takes a partial assignment of the United States' claim. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). As such, the Relator has standing based on the United States' injury. *Id.* ("adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *The Forest Group*, 590 F.3d at 1303-04 ("...the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Juniper Networks v. Shipley*, 2010 U.S. Dist. LEXIS 24889, *16 (N.D. Cal.

Mar. 17, 2010) ("in *qui tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient;" relator had standing to bring 292 claim)[3].

There are two questions then. The first question is whether the United States has standing to pursue a claim against a company that abuses the patent rights the United States granted to it – as part of the contract between the public and the inventor – and injures the public by providing misleading commercial information. The answer to that question is <u>yes</u>. *The Forest Group*, 590 F.3d at 1303 (explaining that the public is injured when it must expend search costs to determine the status of intellectual property); *Clontech Labs*, 406 F.3d at 1356-57(same); *Solo Cup (*Ex. A at 10-11); (U.S. Brief in *Stauffer*, **Exhibit B** hereto).

The second question is whether there is any jurisdictional problem caused by the Relator's pursuit of the United States' claims based on this injury to the public. The answer to that question is <u>no</u>. If it were otherwise, the Federal Circuit would not have addressed the merits in *Solo Cup* but would have *sua sponte* dismissed. *Solo Cup* (**Ex. A**); *Zojo Solutions, Inc. v. The Stanley Works*, 2010 U.S. Dist. LEXIS 46407, *4-5 (N.D. Ill. May 12, 2010) ("it must be remembered that if the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue *sua sponte*.").

Indeed, during briefing in *The Forest Group*, the appellee raised the issue of a *qui tam* relator's standing to bring a claim in the absence of a direct personal injury. (*See* Appellee's Brief in *The Forest Group*, p. 13; **Exhibit C** hereto). The Federal Circuit had two possible responses to this argument: (a) it could have stated that such a plaintiff would not have standing, and thus there was no need to fear claims from "enterprising litigants;" or (b) it could have stated that the statute in fact encouraged enterprising litigants to bring such claims despite the absence of direct injury. The Federal Circuit emphatically chose the latter course. *The Forest Group*,

---

[3] This and all other unpublished decisions are attached as **Group Exhibit 1** in order of appearance.

590 F.3d at 1303-4 ("By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Solo Cup* (**Ex. A** at 11 (reaffirms *Clontech Labs* and *The Forest Group*)); *Zojo Solutions*, 2010 U.S. Dist. LEXIS 46407, *4-5 ("*Forest Group* has confronted – and [has] rejected – the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action.").

Defendants attempt to subvert this argument by citing extensively to *Stauffer*. However, *Stauffer* cannot surmount this law or logic. First, the Federal Circuit has an independent obligation "in the first instance" to determine whether it has subject matter jurisdiction. *International Electronic Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007). In *Solo Cup*, the Federal Circuit ruled on the merits. (**Ex. A**) Thus, unless one believes the Federal Circuit simply "missed" the subject matter jurisdiction issue, despite its obligation to assess it (even sua sponte), the Federal Circuit is comfortable with the standing of relators like Pequinot and Mr. Simonian. Indeed, given that the trial court in *Solo Cup* specifically addressed the standing issue (640 F.Supp.2d 714, 720-21) and given that the Federal Circuit is aware of the pending *Stauffer* case, it is impossible to believe that the Federal Circuit "missed" the issue. Second, *Stauffer* predated *Solo Cup* and *The Forest Group*, which clearly reaffirm the public injury that Congress was seeking to redress with § 292 suits. Considering the strong position it took in *The Forest Group* supporting a "cottage industry" of false-marking bounty hunters, and having had the opportunity to address any subject matter jurisdiction problems in *The Forest Group* and *Solo Cup*, it is difficult to imagine that the Federal Circuit would abort its recent decisions and find that *qui tam* relators have no standing.[4] *Simonian v. Merck*, Mem. Op., at p. 3

---

[4] Given that *Stauffer* was decided before the Federal Circuit's rulings in *Solo Cup* and *The Forest Group*, there is little reason for this Court to view *Stauffer* as persuasive on the jurisdictional issue now. Of course, the Relator does not agree that *Stauffer* ever was persuasive. *See, Harrington v. Ciba Vision Corporation*, 08 C 251, Tr. at 5-6, 116- 122 (W.D.N.C. May 22, 2009) (finding standing for the § 292

(N.D. Ill. June 1, 2010), attached as **Exhibit E** hereto. <u>Third</u>, if *Stauffer* can be read as making a broad statement about Constitutional standing law, that broad reading is simply incorrect, as the United States itself has argued to the Federal Circuit. (*see* **Ex. B**). As the United States summarized, "the district court imposed an injury requirement on Stauffer as a *qui tam* plaintiff that finds no basis in many years of actual practice, cannot be squared with the Supreme Court's reasoning in upholding Article III *qui tam* standing under the False Claims Act in *Vermont Agency*, and would undermine the premise for standing by actions in court by the United States itself under numerous parts of the U.S. Code." (**Ex. B** at 12).

In sum, as *qui tam* relator and assignee of the United States' claims for this purpose, Mr. Simonian has standing to pursue the injury Defendants caused the public by falsely marking its products in violation of § 292, in breach of its patent contract with the public.

## C. The Relator Has Stated a Claim Upon Which Relief Can Be Granted.

The Relator has alleged that Defendants falsely marked their products with an expired patent and has clearly identified the product, the patent and the false marking. (Relator's Complaint attached hereto as **Exhibit F**). Having done so, a "rebuttable presumption" exists that Defendants falsely marked for the purpose of deceiving the public. *Solo Cup* (**Ex. A** at 11-12). As such, as further explained below, the Relator has stated a claim under Rule 8 and has provided the detail required for Rule 9(b) as well. *United States ex rel. Lusby v. Rolls-Royce Corporation*, 570 F.3d 849, 853 (7th Cir. 2009).

---

relator after considering – and rejecting – the *Stauffer* opinion, even before *The Forest Group* ruling) (**Exhibit D** hereto).

1.      **"Intent" need NOT be alleged with particularity.**

Defendants assert that the Relator has failed to plead intent with particularity. Rule 9(b)

however specifically provides to the contrary.[5] While a plaintiff must "state with particularity"

the "circumstances constituting fraud," there are certain things that "may be alleged generally:"

"[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b).

Because things such as knowledge and intent are "uniquely within another party's control," they

may be pled on information and belief. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312,

1330 (Fed. Cir. 2009). Accordingly, the Relator's allegations, on information and belief, that

Defendants acted with intent to deceive the public when they marked their products with two

expired patents is sufficient pursuant to the explicit terms of Rule 9(b).[6]

2.      **The Relator has alleged the requisite "who, what, when, where, and how" of Rule 9(b), has pled the required elements of a false marking claim, and his allegations are plausible under *Iqbal* and *Twombly*.**

Because Rule 9(b) is so clear, Defendants must jumble various requirements together in

an attempt to persuade this Court that the Relator has somehow not complied with his pleading

obligations. Defendants are wrong again. Under the case law, Relator must plead (a) that

Defendants' products are falsely marked, and (b) that Defendants lacked a reasonable belief that

their products were properly marked. *See Clontech*, 406 F.3d at 1352-53. For Rule 9(b)

purposes, Relator must allege with particularity the "circumstances constituting fraud."

However, the reference to "circumstances" does not require Relator to plead "intent" with

---

[5] Because the Relator has complied with Rule 9(b), it need not engage in an extensive debate about whether 9(b) applies to Section 292. However, Relator contends that 9(b) does not apply to false marking cases. *See Astec America v. Power-One, Inc.*, 2008 U.S. Dist. LEXIS 30365, *33 (E.D.Tex. April 11, 2008) (Rule 9(b) does not apply to false marking claims under Section 292); *Third Party Verification, Inc. v. Signaturelink, Inc.* 492 F.Supp. 2d 1314, 1327 (M.D. Fla. 2007)(same).

[6] The intent to deceive is reasonably based given the following facts: 1) the Defendants are sophisticated companies with experience applying for and obtaining patents; and 2) the patent at issue had been expired for over two years.

9

particularity; rather "the cases and commentary agree that the reference to 'circumstances' in the rule requires 'the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content, of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Thus, with regard to the misrepresentation (here, the false marking), the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *Lusby v. Rolls-Royce Corporation*, 570 F.3d at 853. Finally, under *Iqbal* and *Twombly*, the allegations in the complaint must provide notice to the defendant under Rule 8 of a plausible claim. Here, Relator has met all of the foregoing requirements.

In *Lusby*, Judge Easterbrook stated the question nicely: has the *qui tam* defendant been "told exactly what the fraud entails"? Of course, the answer here is yes. Relator has told Defendants: who committed the false marking, (Defendants as depicted in the photographs in **Ex. F** ¶9 and stated throughout the Complaint); what product they falsely marked (Riddex® Plus Pest Repelling Aid, **Ex. F** ¶¶8-10, 21-27, 29-31 ), and what patent in particular was falsely marked on the product (*see* **Ex. F** at ¶¶ 2, 19-21, 23-26); when the false marking event(s) occurred, that is *after* the expiration of the identified expired patent (*see* **Ex. F** at ¶¶ 2, 21, 23, 25-26)); where the false marking occurred, that is on the package for the associated accused product (*see* **Ex. F** at ¶¶ 9, 21-22); and how the false marking was carried out, namely by placing the expired patent number on packaging associated with the accused product (*see* **Ex. F** at ¶¶ 2, 9, 21-22). *See Lusby*, 570 F.3d at 853-54 (reciting the relator's allegations and noting that: (i) a relator cannot be expected to know – and therefore allege – all the specifics in a given circumstance, and (ii) "much knowledge is inferential.")

Furthermore, Relator has also stated a plausible claim as required under Rule 8(a). "The question of whether conduct rises to the level of statutory deception is a question of fact." *Clontech Labs*, 406 F.3d at 1353. Defendants contend that this fact issue can properly be the subject of a motion to dismiss at the pleading stage. Defendants are wrong. Having provided the "who, what, where, when, and how" information required by *Lusby*, Relator's allegation that Defendants did so with the requisite intent to deceive is plausible – and thus in compliance with *Twombly* and *Iqbal*. This "plausibility" is supported by two recent cases. In *Solo Cup*, the Federal Circuit affirmed the trial court's ruling that a "rebuttable presumption" arises from false marking - even with an expired patent – that the false marker intended to deceive. (**Ex. A** at 11-12). Additionally, in *Merck,* the Supreme Court explained that there are some false statements that by their nature show defendant's scienter. 130 S.Ct. 1784 at 1796-7 ("We recognize that certain statements are such that, to show them false, is normally to show scienter as well.").

Moreover, here, the Relator alleges that Defendants – sophisticated companies that have experience with patents – continue to falsely mark the packages for the Riddex ® Plus Pest Repelling Aid with U.S. Patent No. 4,802,057 ("the '057 patent"), which expired in January 2008, more than two years ago. (*see* Exhibit A to Relator's Complaint). Because the Defendants own the patent in question, and because they have experience with patents, it is reasonable to infer that they are aware of the expiration dates of their own property. That a defendant might ultimately be able to rebut the presumption on summary judgment (as in *Solo Cup*) or at trial does not render the Complaint "implausible." *See, Lusby*, 570 F.3d at 854 ("We don't think it is essential for a relator to produce the invoices (and accompanying presentations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential ... and

11

the inference that Lusby proposes is a plausible one." * * * the Relator's pleading need <u>not</u> "exclude all possibility of honesty in order to give the particulars of fraud"). [7]

Finally, having alleged a plausible inference and having answered the five newspaper questions in accordance with the Seventh Circuit's approach in *Lusby*, Defendants nonetheless propose that this Court should follow the district court of Delaware (in *Brinkmeier*) and dismiss Relator's Complaint. There are two problems with this proposition. <u>First</u>, *Lusby* controls in the Northern District of Illinois, not *Brinkmeier*. <u>Second,</u> the *Brinkmeier* standard is inconsistent with *Solo Cup* which properly derives its standard from *Clontech Labs*. *See Clontech Labs*, 406 F.3d at 1352-53 (false marking with knowledge of falsity creates a rebuttable presumption of intent to deceive).

## IV. Defendants' Motion for a Stay Should Be Denied

As an alternative to their Motion to Dismiss, Defendants seek to stay the proceedings pending decisions from the Federal Circuit. In deciding whether a stay is appropriate, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Se-Kure Controls, Inc. v. Sennco Solutions, Inc.*, 675 F.Supp.2d 877, 879 (N.D.Ill. 2009). Because the public will be prejudiced during the delay of this litigation, and because a material change in the law is highly unlikely, Defendants' Motion to Stay should be denied.

---

[7] Because Defendants are "presumed to know the law," it is therefore reasonable for Relator (and this Court) to infer that Defendants knew or should have known that the patent was expired, that such conduct was prohibited by law, and that Defendants intended to violate the law and deceive the public. *See, Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1361-62 (Fed. Cir. 2001) ("because knowledge of the law is chargeable to the inventor," and "inventors represented by counsel are presumed to know the law," the district court's "inference of deceptive intent is not clearly erroneous ... the district court correctly concluded that Novo knew or should have known that the PTO and the Board would have considered the information ... important").

**A.**     **A Stay Would Cause Undue Prejudice and Tactical Disadvantage.**

Dissatisfied with the current state of the law, Defendants seek a stay in the hopes of getting one or two tactical advantages: (a) to delay the case while Defendants' practice of false marking continues; or (b) to delay the case in the hope that the Federal Circuit or, ultimately, the United States Supreme Court, changes current law enough to reduce Defendants' exposure in this case. A hoped-for-change in the law is not a basis for a stay, but even if it was, Defendants cannot demonstrate that its tactical delaying maneuver will not work to the Relator's disadvantage.

But the "tactical disadvantage issue" is almost beside the point. The key issue in this case is the prejudice to the public of allowing Defendants to continue to falsely mark their products while the Federal Circuit decides the appeal of a different case. As the Federal Circuit made clear, Congress determined that the public should not have to spend the search costs to determine whether a patent is valid and enforceable. *Clontech Labs*, 406 F.3d at 1356.

Defendants ignore this entirely, arguing that Relator "has not alleged any act that has…affected him in any way". (Mem. at 15). Defendants therefore assert that there is no injury in staying the case. *Id.* But the Relator brings this claim on behalf of the United States, to redress wrongs to the public. Until Defendants' false marking is effectively stopped, the public will continue to have to bear the expenses required to confirm the status of Defendants' alleged patent rights. A stay of this litigation will thus prolong the injury to the public articulated by the Federal Circuit.

**B.**     **A Stay Will Neither Simplify Issues in this Case Nor Will it Reduce the Burden of Litigation on the Parties and Court.**

Defendants hope that *Stauffer* will materially affect the Relator's standing to sue in this *qui tam* action. As stated in response to Defendants' Motion to Dismiss, the question of standing

has been answered such that an answer to the contrary by the Federal Circuit now would (i) be surprising given current law; and (ii) lead to a petition for rehearing *en banc* and a writ of *certiorari*. In other words, under a best case scenario for Defendants, a stay would need to remain in place for a great deal longer than Defendants suggest.

Defendants cannot demonstrate that the Federal Circuit's ruling in *Stauffer* is likely to change the current law given: (a) The Federal Circuit, which has an obligation to *sua sponte* determine whether it has subject matter jurisdiction, just issued a ruling on the merits in *SoloCup* without having raised the (perceived) issue of standing (*see Solo Cup* **Ex. A**); (b) the Federal Circuit's explanation of the injury to the public created by false marking in *Clontech Labs* and *The Forest Group*; (c) the Federal Circuit's response to appellee's arguments regarding standing in *The Forest Group* (Appellee's Brief, *Ex. C*); (d) the position of the United States itself in support of the current state of the law and against the opinion in *Stauffer* (U.S. Brief **Ex. B**); (e) the fact that *Stauffer* was decided prior to the Federal Circuit's opinions in *The Forest Group* and *Solo Cup*; (f) the fact that the *Stauffer* court (615 F.Supp.2d at 255) found a lack of standing based on a factual challenge and not on a facial challenge to standing [8]; and (g) the fact that Mr. Stauffer insulted the court's intelligence by arguing that he was "injured" by the mis-marking because he "found himself questioning his own professional competence, inasmuch as he was sure that Brooks Brothers could not have committed such a brazen section 292 violation." 615 F.Supp.2d at 255 fn. 7.

---

[8] As a general matter, a defendant can make two types of challenges to standing. Either a defendant can assert that, facially, the plaintiff has not sufficiently pled standing, or a defendant can submit evidence that calls into question the accuracy of the plaintiff's facially-sound standing allegations. *Apex Digital, Inc. v. Sears, Roebuck & Company*, 572 F.3d 440, 443 (7th Cir. 2009) (explaining "the critical difference between facial and factual challenges to jurisdiction"). Unlike the Defendant in *Stauffer*, the Defendants in this case have not made a factual challenge to standing (*i.e.*, Defendants have not submitted evidence to the Court that would demonstrate that the Relator's allegations of standing are false).

It is thus clear that the law with respect to standing is settled and that the injury to the public from false marking will be prolonged during a stay of this litigation. This case should go forward.

### V. Conclusion

For the foregoing reasons, Relator respectfully submits that Defendants' Motion to Dismiss or Stay should be denied. [9]

Dated: June 17, 2010            Respectfully submitted,

           By: /s/ John P. Bjork
                 John P. Bjork

Joseph M. Vanek
John P. Bjork
VANEK, VICKERS & MASINI, P.C.
111 S. Wacker Drive, Suite 4050
Chicago, Illinois 60606

Bruce S. Sperling
Robert D. Cheifetz
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

Martin Goering
Jessica E. Rissman
EUGENE M. CUMMINGS, P.C.
One North Wacker Drive, Suite 4130
Chicago, Illinois 60606

---

[9] As stated herein, Defendants' Motion to Dismiss should be denied. However, should the Complaint be dismissed, it should be done without prejudice. Amendment in this case would not be futile as Defendants suggest. Although the Relator strongly contends he has met his pleading obligations, greater detail can be provided if the Court believes it necessary. The Relator therefore respectfully requests leave to amend should Defendants' Motion to be granted.

15

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on June 17, 2010, a true and correct copy of **RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY** was filed electronically with the Clerk of the Court and was served via the Court's CM/ECF System which will automatically provide electronic notice upon all counsel of record.

/s/ John P. Bjork
_____

John P. Bjork